**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| HERITAGE FOUNDATION | ) | |
| 214 Massachusetts Ave. N.E. | ) | |
| Washington, D.C.  20002, | ) | |
| | ) | |
| MIKE HOWELL | ) | |
| 214 Massachusetts Ave. N.E. | ) | |
| Washington, D.C.  20002, | ) | |
| | ) | |
| *Plaintiffs,* | ) | |
| v. | ) | Case No.  24-cv-2862 |
| | ) | |
| U.S. DEPARTMENT OF STATE | ) | |
| 2201 C Street N.W. | ) | |
| Washington, D.C.  20520, | ) | |
| | ) | |
| OFFICE OF MANAGEMENT AND BUDGET | ) | |
| 725 17th Street, N.W. | ) | |
| Washington, D.C.  20503, | ) | |
| | ) | |
| U.S. DEPARTMENT OF DEFENSE | ) | |
| 1000 Defense Pentagon | ) | |
| Washington, D.C.  20301, | ) | |
| | ) | |
| *Defendants.* | ) | |
| | ) | |

## COMPLAINT AND PRAYER FOR DECLARATORY
## AND INJUNCTIVE RELIEF

Plaintiffs THE HERITAGE FOUNDATION and MIKE HOWELL (collectively "Plaintiffs") for their complaint against Defendants U.S. DEPARTMENT OF STATE ("State Department" or "Defendant State"), OFFICE OF MANAGEMENT AND BUDGET ("OMB" or "Defendant OMB"), and DEPARTMENT OF DEFENSE ("DoD" or "Defendant DoD") (collectively "Defendants"), allege on knowledge as to Plaintiffs, and on information and belief as to all other matters, as follows:

## BACKGROUND

1.     This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C § 552, to compel the production of certain records related to one FOIA request Plaintiffs submitted to each Defendant.  On September 23, 2024, Ukrainian President Volodymyr Zelensky visited the Scranton Army Ammunition Plant in Scranton, PA.  The Scranton Army Ammunition Plant is a United States Army Joint Munitions Command ("JMC") facility that manufactures large-caliber metal projectiles and mortar projectiles for the Department of Defense; it is government owned and contractor operated.  *See Scranton Operations:  Forging and Machining Capabilities*, General Dynamics (2021), https://www.gd-ots.com/wp-content/uploads/2021/10/Scranton-Brochure-2021-04.pdf (last visited Oct. 8, 2024).  Pennsylvania is a hotly contested "battleground" state in the 2024 General Election; NBC has labeled Pennsylvania the "trickiest battleground for Vice President Harris to win."  Allan Smith, *Harris faces her 'toughest' battleground fight against Trump in Pennsylvania*, https://www.nbcnews.com/politics/2024-election/kamala-harris-toughest-battleground-pennsylvania-trump-rcna168288 (last visited Oct. 8, 2024).  President Zelensky was accompanied by Pennsylvania Governor Josh Shapiro (D), a key surrogate for Vice President Harris's Presidential campaign, as well as Senator Bob Casey (D-PA) and Representative Matt Cartwright (D-PA).  *See* App. B at 1; App. F at 1.  Senator Casey and Representative Cartwright are running for reelection in the 2024 General Election.  In the words of Speaker of the House Mike Johnson, the trip "failed to include a single Republican because—on purpose—no Republicans were invited."  App. F at 1.

2.     This trip coincided with President Zelensky unveiling his blueprint to defeat the Russian advance in Ukraine to President Joseph R. Biden.  The visit created intense and widespread media coverage concerning President Zelensky's comments that were highly critical

of President Donald J. Trump and Vice Presidential candidate J.D. Vance's policy positions on the Ukraine War.  President Zelensky said Senator J.D. Vance is "too radical" and called into question President Trump's ability to stop the Ukrainian War.  Joshua Yaffa, *Volodymyr Zelensky Has a Plan for Ukraine's Victory*, New Yorker (Sep. 22, 2024), https://www.newyorker.com/news/the-new-yorker-interview/volodymyr-zelensky-has-a-plan-for-ukraines-victory.  President Zelensky's criticisms mirrored the policy positions of Vice President Harris, and he was broadly supportive of the Biden-Harris Administration.  President Zelensky's comments immediately prompted extensive controversy that was wildly covered in the media.  *See, e.g.*, App. A. In particular, questions were raised about federal government ethics violations and federal election law violations involving foreign interference in American elections, including congressional scrutiny.  *Id.*

3.  Following significant media interest, congressional scrutiny mounted. On September 24, 2024, fourteen House Members requested that the Department of Defense Inspector General and the Department of Justice Inspector General investigate media reports that President Zelensky was flown in a "U.S. Air Force C-17 military aircraft and was provided Secret Service protection, both of which involve the use of U.S. taxpayer funds."  *See* App. B. at 1.  The House Members continued, "[t]here is concern that these resources were used for purposes unrelated to U.S. national security or bilateral diplomacy but rather to support a politically significant visit ahead of a major U.S. election." *Id.*

4.  On September 25, 2024, House Oversight and Accountability Chairman James Comer sent letters to White House Counsel Edward Siskel, Secretary of Defense Lloyd J. Austin III, and U.S. Attorney General Merrick B. Garland requesting information about President Zelensky's visit "[b]ecause the Biden-Harris Administration orchestrated and used government

resources to make possible this apparent campaign event that resulted in the potential interference in a federal election."  Apps. C, D, & E at 1.

5.    The same day, Speaker Johnson sent a letter to President Zelensky demanding the immediate firing of the Ukrainian Ambassador to the United States because the visit "was in a politically contested battleground state, was led by a top political surrogate for Kamala Harris, and failed to include a single Republican because–on purpose–no Republicans were invited.  The tour was clearly a partisan campaign event designed to help Democrats and is clearly election interference."  App. F at 1.

6.    The combined media attention and scrutiny from Congressional leaders highlights the gravity of the alleged government impropriety.  Indeed, the Biden-Harris Administration's possible abuse of federal election and ethics laws may well rise to the level of impeachable conduct.  President Donald J. Trump was impeached simply for raising legitimate foreign policy and law enforcement concerns that may have had some incidental political benefit in an non-election year.  *See* App. C, D, & E at 1 ("In 2019, the Democrat-controlled House of Representatives impeached President Donald J. Trump for abuse of power under the theory that he attempted to use a foreign leader—Ukrainian President Volodymyr Zelensky—to benefit his 2020 presidential campaign, despite a lack of any evidence of wrongdoing on the part of President Trump.").  Here, the campaign benefit to Vice President Haris is clear and occurred 42 days prior to the election; the legitimate purpose of what was essentially a photo op is entirely unknown.  To state the obvious, whether these abuses extend to impeachable conduct must be investigated forthwith as the Vice President's conduct is implicated and she is running for President.  FOIA may well be the only means to obtain these answers for the American People considering the Biden-Harris Administration's well documented refusal to cooperate with lawful Congressional

oversight.  The allegations of the media and Congress are dire and pose the quintessential question of government impropriety.

## PARTIES

7.      Plaintiff The Heritage Foundation is a Washington, D.C.-based nonpartisan public policy organization with a national and international reputation whose mission is to "formulate and promote public policies based on the principles of free enterprise, limited government, individual freedom, traditional American values, and a strong national defense." Heritage Foundation, About Heritage, https://www.heritage.org/about-heritage/mission (last visited Oct. 8, 2024).  Heritage is a not-for-profit section 501(c)(3) organization which engages in substantial dissemination of information to the public.

8.      Plaintiff Mike Howell leads The Heritage Foundation's Oversight Project and is an author for The Daily Signal.  The Oversight Project is an initiative aimed at obtaining information via FOIA requests and other means in order to best inform the public and Congress for the purposes of Congressional oversight.  "The requests and analyses of information are informed by Heritage's deep policy expertise.  By its nature, the Oversight Project is primarily engaged in disseminating information to the public."  Oversight Project, https://www.heritage.org/oversight (last visited Oct. 8, 2024); Oversight Project (@OversightPR), X (last visited Oct. 8, 2024), https://twitter.com/OversightPR.  Staff for the Oversight Project routinely appear on television, radio, print, and other forms of media to provide expert commentary on salient issues in the national debate.

9.      Defendant State Department is a federal agency of the United States within the meaning of 5 U.S.C. § 552(f)(1) whose mission statement is "[t]o protect and promote U.S. security, prosperity, and democratic values and shape an international environment in which all

Americans    can    thrive."       Mission;    About    the    U.S.    Department    of    State,

https://www.state.gov/about/ (last visited Oct. 8, 2024).

10.    Defendant OMB is a federal agency of the United States within the meaning of

5 U.S.C. § 552(f)(1) whose mission statement is to "serve[] the President of the United States in

overseeing the implementation of his or her vision across the Executive Branch.  OMB's mission

is to assist the President in meeting policy, budget, management, and regulatory objectives and to

fulfill   the   agency's   statutory   responsibilities."   Office   of   Management   and   Budget,

https://www.whitehouse.gov/omb/ (last visited Oct. 8, 2024).

11.    Defendant DoD is a federal agency of the United States within the meaning of

5 U.S.C. § 552(f)(1) whose mission statement is "to provide the military forces needed to deter

war    and    ensure    our    nation's    security."    About;    Department    of    Defense,

https://www.defense.gov/About/ (last visited Oct. 8, 2024).

## JURISDICTION AND VENUE

12.    This Court has jurisdiction pursuant to 5 U.S.C. § 552(a)(4)(B) because this action

is brought in the District of Columbia and 28 U.S.C. § 1331 because the resolution of disputes

under FOIA presents a federal question.

13.    Venue is proper in this Court under 28 U.S.C. § 1391(b) because Defendants'

principal places of business are in the District of Columbia.

## PLAINTIFFS' REQUEST

14.    Plaintiffs submitted the Requests on September 25, 2024 to all Defendants.

*See* Plaintiffs' FOIA Request, No. F-2024-21896 (Sept. 25, 2024) ("State Request") (Ex. 1);

Plaintiffs' FOIA Request, No. 2024-1311 (Sept. 25, 2024) ("OMB Request") (Ex. 2); Plaintiffs'

FOIA Request, No. 24-F-3221 (Sept. 25, 2024) ("DoD Request") (Ex. 3) (collectively "Requests").

15.     The Requests were identical for each Defendant and specifically sought:  "All records relating to Ukrainian President Volodymyr Zelensky's visit to the Scranton Army Ammunition Plant in Scranton, PA on September 23, 2024, including ethics guidance, inter- and/or intra-governmental clearances, final agency plans, and excluding all national security information or similar classified information and information relating to physical security arrangements." Exs. 1–3 at 1.

16.     The Requests sought a fee waiver based on Heritage's status as a not-for-profit and the fact that a purpose of the Request was to allow Heritage to gather information on a matter of public interest for (among other things) use by authors of *The Daily Signal*, which is a major news outlet.  *Id*. at 4–5.

17.     The Requests also sought production of records in partial responses as soon as they became available.  *Id*. at 4.

18.     Plaintiffs requested expedited processing for the Requests with each agency.  The factual and legal basis for the Application was explained in a four-page submission that explained how the Requests met each agency's regulatory requirements for expedited processing.  Each application attached 6 appendices totaling 356 pages that included a compilation of news articles, and a letter from fourteen House Members.  *Id.* at 5.

19.     The news articles and congressional scrutiny demonstrate "[t]here are possible questions, in a matter of widespread and exceptional public interest, about the Government's integrity which affect public confidence[,]"  5 C.F.R. § 1303.40(e)(iv) and that "[w]ith respect to a request made by a person primarily engaged in disseminating information, there exists an

urgency to inform the public concerning actual or alleged Federal Government activity." 5 U.S.C. § 552(a)(6)(E)(v)(II).

20.    Additionally, this expedited processing record demonstrates "[w]ith respect to a request made by a person primarily engaged in disseminating information, there exists an urgency to inform the public concerning actual or alleged Federal Government activity." 22 C.F.R. § 171.12(d)(ii); and also demonstrates "a person whose primary professional activity or occupation is information dissemination also . . . must establish a particular urgency to inform the public about the government activity involved in the request—one that extends beyond the public's right to know about government activity generally." 32 C.F.R. § 286.8(e)(3).

21.    On September 25, 2024, Plaintiffs submitted supplemental expedited processing packages to each Defendant including four appendices containing a letter from the House Committee on Oversight and Accountability Chairman James Comer concerning Zelensky's Scranton Army Ammunition Plant visit to White House Counsel Edward Siskel, Secretary of Defense Lloyd J. Austin III, and Attorney General Merrick B. Garland; and a letter from House Speaker Mike Johnson to Ukrainian President Zelensky demanding the resignation of the Ukrainian Ambassador to the U.S. due to Zelensky's Scranton Army Ammunition Plant visit.  *See* State Department Supplemental Expedited Processing Application (Ex. 4); OMB Supplemental Expedited Processing Application (Ex. 5); DoD Supplemental Expedited Processing Application (Ex. 6).

22.    The expedited processing record makes clear that policy towards Ukraine is a key issue for voters in the upcoming 2024 General Election and that the candidates have disagreement on that issue.  It also makes clear that the propriety of President Zelensky's Scranton visit is very much part and parcel of that major electoral issue.

## DEFENDANT STATE DEPARTMENT IMPROPERLY DENIED EXPEDITED PROCESSING

23.     Defendant State Department acknowledged receipt of the Request on September 30, 2024, and assigned it tracking number F-2024-21896.  *See* Email from Brooke Nicholas to Roman Jankowski (Sept. 30, 2024) (Ex. 7).

24.     Defendant denied Plaintiffs' request for expedited processing without explanation on September 30, 2024 and invoked "usual circumstances" pursuant to 5 U.S.C. § 552(a)(6)(B)(i)–(iii).  Ex. 7 at 1–2.

25.     By separate email also dated September 30, 2024, Defendant further informed Plaintiffs, "[y]our fee waiver justification for Department of State FOIA case number, F-2024-21896 does not explain specifically how the records requested in this case are likely to significantly contribute to the public understanding of the operations of government."  Email to Roman Jankowski from State Department FOIA Officer (Sept. 30, 2024) (Ex. 8 at 1).  Defendant requested clarification of Plaintiffs' "ability and intent to disseminate the information requested, *e.g.*, have you published or disseminated information in this or related fields in the past?  Is the information requested to be used in a specific article or paper currently being prepared?  When is the article to be published or the program to be aired?  To what audience is the article or program aimed?"  *Id.*  The State Department Acknowledgement did not speak to the merits of the Request.

26.     Plaintiffs informed Defendant State:

The basis for the fee waiver is beyond obvious:  the profound public interest in these records as (among many other things) they concern apparent conduct far more egregious than that deemed impeachable by the House of Representatives in 2018 and are directly at issue in the 2024 Presidential Election. See Request at 4–7.  The correspondence below is obviously dilatory and of course has no legal effect as you cannot "toll" a regulatory and statutory timeline.  In any event, the records sought will be analyzed and content reported via the Oversight Project's X Account, The Daily Signal, and likely appearances on any number of media outlets given the massive press interest in the records.  The Oversight Project has done repeated work

regarding Biden-Harris Administration's abuses of power.  Additionally, experts at the Heritage Foundation routinely analyze issues regarding Ukrainian aid.

Email from Counsel to Ennelle Debrosse, Branch Chief, Bureau of Administration, A/GIS/IPS/CR (Sept. 30, 2024) (Ex. 9).

27.     Defendant State Department has not made a determination on the State Request.

28.     Defendant State Department has not passed on Plaintiffs' fee waiver request and has informed Plaintiffs it would issue a determination at a later date.  *Id.*

**DEFENDANT OMB HAS FAILED TO ACTUALLY EXPEDITE THE OMB REQUEST**

29.     OMB's FOIA Office acknowledged receipt of the Request on September 26, 2024, and assigned it tracking number 2024-1311.  *See* Letter from OMB FOIA Office to Mike Howell (Sept. 26, 2024) (Ex. 10).

30.     Plaintiffs additionally supplemented the expedited processing application to OMB to seek expedition under 5 CFR § 1303.40(e)(iv) as well 22 as CFR § 171.12(d)(3).  *See* OMB Expedited Processing Supplement (Oct. 2, 2024) (Ex. 11).

31.     Defendant OMB granted expedited processing on the request on October 3, 2024. *See* Letter from Tim Nusraty to Mike Howell (Oct. 3, 2024) (Ex. 12).  Curiously, OMB did not specify the grounds on which they granted expedited processing.

32.     Defendant OMB further informed Plaintiffs that even though the Request was placed in the expedited processing queue, to "please understand, however, that the granting of expedited processing does not guarantee that your request will be completed by a date certain. OMB has a significant backlog of FOIA requests and we are doing our best to respond to each request as quickly as possible."  *Id.* at 1.

33.     Plaintiffs have not received any other communications regarding the OMB Request since October 3, 2024.

34.     Defendant OMB has not made a determination on the OMB Request.

35.     Defendant OMB has not passed on Plaintiffs' fee waiver request.

36.     Defendant OMB has not actually expedited the Request by processing it "as soon as practicable."  5 U.S.C. § 552(a)(6)(E)(iii).

37.     Ten calendar days from September 25, 2024, is October 6, 2024.

## DEFENDANT DOD HAS CONSTRUCTIVELY DENIED EXPEDITED PROCESSING

38.     Defendant DoD acknowledged receipt of the Request via the DoD FOIA Portal on September 25, 2024, and assigned it tracking number 24-F-3221.  *See* DoD FOIA Portal Screen Capture (Ex. 13).

39.     On October 7, 2024, Defendant DoD notified Plaintiffs that it had forwarded Plaintiffs' Request to the United States Army for processing.  *See* Letter from Stephanie L. Carr to Mike Howell (Oct. 7, 2024) (Ex. 14).

40.     Defendant DoD has not made a determination on the Request.

41.     Defendant DoD has not ruled on Plaintiffs' fee waiver request.

42.     Nor has Defendant DoD ruled on Plaintiffs' application for expedited processing

43.     Defendant DoD has not actually expedited the Request by processing it "as soon as practicable."  5 U.S.C. § 552(a)(6)(E)(iii).

44.     Ten calendar days from September 25, 2024, is October 6, 2024.

### FIRST CLAIM FOR RELIEF
### Violation of FOIA, 5 U.S.C. § 552
### Wrongful Denial of Expedited Processing

45.     Plaintiffs re-allege the foregoing paragraphs as if fully set out herein.

46.     FOIA requires all doubts to be resolved in favor of disclosure.  "Transparency in government operations is a priority of th[e Biden] . . . Administration."  Attorney General,

*Memorandum for Heads of Executive Departments and Agencies:  Freedom of Information Act Guidelines*, at 4 (Mar. 15, 2022).

47.    Plaintiffs properly requested records within the possession, custody, or control of Defendants.

48.    Plaintiffs properly asked that Defendants expedite the processing of Plaintiffs' FOIA Request, based upon Plaintiffs' showing that the Request was: as concerns OMB, "possible questions, in a matter of widespread and exceptional public interest, about the Government's integrity which affect public confidence," 5 CFR § 1303.40(e)(iv) or, alternatively, 5 U.S.C. § 552(a)(6)(E)(v)(II); as concerns the State Department, "[w]ith respect to a request made by a person primarily engaged in disseminating information, there exists an urgency to inform the public concerning actual or alleged Federal Government activity," 22 C.F.R. § 171.12(d)(ii); and, as concerns DOD, "a person whose primary professional activity or occupation is information dissemination also . . . must establish a particular urgency to inform the public about the government activity involved in the request—one that extends beyond the public's right to know about government activity generally."  32 C.F.R. § 286.8(e)(3).

49.    Defendant DoD did not rule on Plaintiffs' application for expedited processing.

50.    OMB granted expedited processing.

51.    Defendant Department of State wrongfully denied Plaintiffs application for expedited processing.  Plaintiffs are entitled to seek immediate judicial relief for Defendant Department of State's denial of expedited processing. *See* 5 U.S.C. § 552(a)(6)(E)(iii) ("Agency action to deny . . . a request for expedited processing pursuant to this subparagraph . . . shall be subject to judicial review."); *ACLU v. DOJ*, 321 F.Supp.2d 24, 28–29 (D.D.C. 2004).

52.     Defendants have failed to *actually* expedite the Requests by processing them "as soon as practicable."  5 U.S.C. § 552(a)(6)(E)(iii).

53.     Defendants are in violation of FOIA.

54.     Plaintiffs are being irreparably harmed by reason of Defendants' violation of FOIA. Plaintiffs are being denied information to which they are statutorily entitled to on an expedited basis and that is important to carrying out Plaintiffs' functions as a non-partisan research and educational institution and publisher of news.  Plaintiffs will continue to be irreparably harmed unless Defendants are compelled to comply with the law.

55.     Plaintiffs have no adequate remedy at law.

56.     Plaintiffs have exhausted all required administrative remedies.

**WHEREFORE** as a result of the foregoing, Plaintiffs pray that this Court:

A.     Enter a preliminary and permanent injunction compelling Defendant to process Plaintiffs' FOIA Request on an actually expedited basis;

B.     Award Plaintiffs their costs and reasonable attorneys' fees in this action as provided by 5 U.S.C. § 522(a)(4)(E); and

C.     Grant such other and further relief as this Court may deem just and proper.

Dated:  October 8, 2024          Respectfully submitted,

/s/ Samuel Everett Dewey
SAMUEL EVERETT DEWEY
(No. 999979)
Chambers of Samuel Everett Dewey, LLC
Telephone:  (703) 261-4194
Email: samueledewey@sedchambers.com

ERIC NEAL CORNETT
(No. 1660201)
Law Office of Eric Neal Cornett
Telephone: (606) 275-0978
Email: neal@cornettlegal.com

KYLE BROSNAN
(No. 90021475)
The Heritage Foundation
Telephone: (202) 608-6060
Email: Kyle.Brosnan@heritage.org

MAX TAYLOR MATHEU
(No. 90019809)
Telephone: (727) 249-5254
Email: maxmatheu@outlook.com

*Counsel for Plaintiffs*