UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| HERITAGE FOUNDATION et al., Plaintiffs, v. U.S. DEPARTMENT OF STATE et al., Defendants. | Case No. 1:24-cv-2862-TJK |

## MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION AND IN SUPPORT OF DEFENDANTS' PARTIAL MOTION TO DISMISS

## TABLE OF CONTENTS

INTRODUCTION .................................................................................................................. 1

BACKGROUND ................................................................................................................... 3

I.    Statutory and Regulatory Framework ........................................................................ 3

    A.    The General FOIA Processing Framework ........................................................ 3

    B.    The Expedited Processing Regulatory Framework ............................................ 5

II.    Procedural Background ............................................................................................... 6

    A.    Heritage's Requests for Records ........................................................................ 6

    B.    Heritage's Expedition Requests ......................................................................... 7

    C.    The Agencies' Responses and Determinations .................................................. 9

        1. *State Department* ......................................................................................... 9

        2. *OMB* ............................................................................................................. 9

        3. *DOD Office of the Secretary of Defense/Joint Staff* .................................. 10

    D.    Heritage's Suit ................................................................................................. 11

ARGUMENT ...................................................................................................................... 12

HERITAGE'S MOTION FOR PRELIMINARY INJUNCTION SHOULD BE DENIED
    AND DEFENDANTS' PARTIAL MOTION TO DISMISS SHOULD BE
    GRANTED ...................................................................................................................... 12

I.    Obtaining a Mandatory Preliminary Injunction is a Heavy Burden ............................ 12

II.    Heritage Has Not Demonstrated It Will Suffer Irreparable Harm. ............................... 13

III.    Heritage Is Unlikely to Succeed on the Merits ............................................................ 19

    A.    Heritage Has Not Demonstrated Likelihood of Success for Compelling
        Need ................................................................................................................. 19

        1. Heritage Has Not Shown an Urgency to Inform ........................................... 20

        2. Heritage is Not Primarily Engaged in Disseminating Information ............... 25

i

B.      Heritage Is Not Entitled to Processing of Records on a Date Certain ............... 28

IV.    The Public Interest and Balance of Equities Weigh Against a Preliminary Injunction. ....................................................................................................................... 29

V.     Defendants' Cross-Motion to Dismiss Should be Granted ............................................ 30

CONCLUSION ................................................................................................................................ 32

## <u>TABLE OF AUTHORITIES</u>

**CASES**

*Alcresta Therapeutics, Inc. v. Azar*,
   318 F. Supp. 3d 321 (D.D.C. 2018) ........................................................................... 14

\* *Al-Fayed v. CIA*,
   254 F.3d 300 (D.C. Cir. 2001) .......................................................................... *passim*

*Allied Progress v. CFPB*,
   No. 17-cv-686-CKK, 2017 WL 1750263 (D.D.C. May 4, 2017) ............................ 26

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ................................................................................................ 30, 31

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ...................................................................................................... 31

\* *Brennan Ctr. for Just. at NYU Sch. of Law v. Dep't of Com.*,
   498 F. Supp. 3d 87 (D.D.C. 2020) .................................................................... *passim*

\* *Citizens for Resp. & Ethics in Wash. v. FEC* ("*CREW*"),
   711 F.3d 180 (D.C. Cir. 2013) ...................................................................................... 4

*CityFed Fin. Corp. v. Off. of Thrift Supervision*,
   58 F.3d 738 (D.C. Cir. 1995) ...................................................................................... 13

*Comm. on Judiciary of United States House of Representatives v. McGahn*,
   968 F.3d 755 (D.C. Cir. 2020) .................................................................................... 25

*Ctr. for Pub. Integrity v. DOD*,
   411 F. Supp. 3d 5 (D.D.C. 2019) ................................................................................ 28

*DHS v. New York*,
   140 S. Ct. 599 (2020) .................................................................................................. 14

*Dorfmann v. Boozer*,
   414 F.2d 1168 (D.C. Cir. 1969) .................................................................................. 14

\* *Elec. Priv. Info. Ctr. v. DOD* ("*EPIC I*"),
   355 F. Supp. 2d 98 (D.D.C. 2004) ................................................................... 4, 21, 23

\* *Elec. Priv. Info. Ctr. v. DOJ* ("*EPIC III*"),
   15 F. Supp. 3d 32 (D.D.C. 2014) ........................................................................... 5, 13

*Energy Pol'y Advocs. v. Dep't of the Interior,*
  No. 21-cv-1247-JEB, 2021 WL 4306079 (D.D.C. Sept. 22, 2021).........................................25

*Guedes v. Bureau of Alcohol, Tobacco, Firearms & Explosives,*
  920 F.3d 1 (D.C. Cir. 2019)................................................................................................13

\* *Heritage Found. v. EPA* ("*Heritage I*"),
  No. 23-748-JEB, 2023 WL 2954418 (D.D.C. Apr. 14, 2023),
  *appeal dismissed*, 2023 WL 8116008 (D.C. Cir. Nov. 17, 2023)....................................*passim*

\* *Heritage Found. v. DOJ* ("*Heritage II*"),
  No. 23-cv-1854-DLF, 2023 WL 4678763 (D.D.C. July 19, 2023),
  *appeal dismissed as moot*, 2023 WL 6884264 (D.C. Cir. Oct. 16, 2023) ........................*passim*

*Hinton v. Corr. Corp. of Am.*,
  624 F. Supp. 2d 45 (D.D.C. 2009) .....................................................................................31

*Jud. Watch, Inc. v. DHS*,
  895 F.3d 770 (D.C. Cir. 2018) .............................................................................................4

\* *Landmark Legal Found. v. EPA*,
  910 F. Supp. 2d 270 (D.D.C. 2012)............................................................................26, 27, 28

*League of Women Voters of the U.S. v. Newby*,
  838 F.3d 1 (D.C. Cir. 2016)............................................................................................13, 15

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992), *aff'd*, 793 F.3d 106 (D.C. Cir. 2015). .................................................30

*Massachusetts v. Mellon*,
  262 U.S. 447 (1923).........................................................................................................14

*Munaf v. Geren*,
  553 U.S. 674 (2008).........................................................................................................12

\* *N.Y. Times Co. v. Def. Health Agency*,
  No. 21-cv-566-BAH, 2021 WL 1614817 (D.D.C. Apr. 25, 2021)....................................12, 30

*Navajo Nation v. Azar*,
  292 F. Supp. 3d 508 (D.D.C. 2018) ....................................................................................13

\* *Protect Democracy Project, v. DOD* ("*Protect Democracy I*"),
  263 F. Supp. 3d 293 (D.D.C. 2017)............................................................................21, 23, 25

*Sampson v. Murray*,
  415 U.S. 61 (1974)...........................................................................................................13

*Sherley v. Sebelius,*
    689 F.3d 776 (D.C. Cir. 2012) ................................................................. 13

*Student Loan Servicing All. v. Dist. of Columbia,*
    317 F. Supp. 3d 89 (D.D.C. 2018) ............................................................ 30

*TransUnion LLC v. Ramirez,*
    594 U.S. 413 (2021) ................................................................................. 30

*Trump v. Hawaii,*
    585 U.S. 667 (2018) ................................................................................. 14

*Trump v. Mazars USA,*
    591 U.S. 848 (2020) ................................................................................. 25

*United States v. Whitton,*
    534 F. Supp. 3d 32 (D.D.C. 2021) ............................................................ 18

*Univ. of Tex. v. Camenisch,*
    451 U.S. 390 (1981) ................................................................................. 13

* *Winter v. Nat. Res. Def. Council, Inc.,*
    555 U.S. 7 (2008) .................................................................. 12, 13, 19, 29

*Wis. Gas Co. v. FERC,*
    758 F.2d 669 (D.C. Cir. 1985) ................................................................. 18

*Zevallos v. Obama,*
    10 F. Supp. 3d 111 (D.D.C. 2014) ............................................................ 30

**STATUTES**

* 5 U.S.C. § 552 ............................................................................................. 11

5 U.S.C. § 552(a)(3)(A) ................................................................................. 4

5 U.S.C. § 552(a)(6)(A)(i) ............................................................................. 4

5 U.S.C. § 552(a)(6)(B)(i) ........................................................................... 4, 9

5 U.S.C. § 552(a)(6)(B)(ii) ............................................................................ 9

5 U.S.C. § 552(a)(6)(B)(iii) ........................................................................... 9

5 U.S.C. § 552(a)(6)(C)(i) ............................................................................. 4

v

5 U.S.C. § 552(a)(6)(E) ............................................................................................ 4

5 U.S.C. § 552(a)(6)(E)(i)(I) ..................................................................................... 5

5 U.S.C. § 552(a)(6)(E)(i)(II) .................................................................................... 5

5 U.S.C. § 552(a)(6)(E)(ii)(I) .................................................................................... 6

* 5 U.S.C. § 552(a)(6)(E)(iii) .......................................................................... *passim*

5 U.S.C. § 552(a)(6)(E)(v) ........................................................................................ 5

5 U.S.C. § 552(a)(6)(E)(v)(II) ................................................................................. 19

18 U.S.C. § 1507 ...................................................................................................... 16

Electronic Freedom of Information Act Amendments of 1996 ("EFOIA"),
    Pub. L. No. 104-231, 110 Stat. 3048 (codified at 5 U.S.C. § 552(a)(6)(E)) ............................... 4

**RULES**

Fed. R. Civ. P. 12(b)(1), (b)(6) ............................................................................... 30

**REGULATIONS**

5 C.F.R. § 1303.40(e) ................................................................................................ 5

5 C.F.R. § 1303.40(e)(1)(i) ........................................................................................ 6

5 C.F.R. § 1303.40(e)(1)(ii) ....................................................................................... 6

5 C.F.R. § 1303.40(e)(1)(iii) ...................................................................................... 6

5 C.F.R. § 1303.40(e)(1)(iv) ...................................................................................... 6

5 C.F.R. § 1303.40(e)(4) ............................................................................................ 5

5 C.F.R. § 1303.40(e)(iv) ........................................................................................... 9

22 C.F.R. § 171.12(d) ................................................................................................ 5

22 C.F.R. § 171.12(d)(1)(i) ........................................................................................ 6

22 C.F.R. § 171.12(d)(1)(ii) ....................................................................................... 6

22 C.F.R. § 171.12(d)(1)(iii) ...................................................................................... 6

22 C.F.R. § 171.12(d)(4) ........................................................................................ 5

32 C.F.R. § 286.3(a) ............................................................................................. 10

32 C.F.R. § 286.7(c) ............................................................................................. 10

32 C.F.R. § 286.8(a) ............................................................................................. 10

32 C.F.R. § 286.8(e) .............................................................................................. 5

32 C.F.R. § 286.8(e)(1)(i)(A) .................................................................................. 6

32 C.F.R. § 286.8(e)(1)(i)(B) .................................................................................. 6

32 C.F.R. § 286.8(e)(1)(ii) ...................................................................................... 6

32 C.F.R. § 286.8(e)(4) ........................................................................................... 5

**OTHER AUTHORITIES**

* @OversightPR, X, https://x.com/oversightpr (last visited Oct. 16, 2024). ......................... 16, 27

* https://oversight.heritage.org/App.A.pdf ...................................................... 7, 8, 22, 24

https://oversight.heritage.org/App.B_9.24.24_Letter_to_Inspector_Generals_on_President_Zelen sky_Scranton_PA_Visit.pdf .......................................................................... 7

https://oversight.heritage.org/App.C(09.25.24-Letter-to-White-House-Counsel-re-Zelensky-Visit).pdf ........................................................................................................ 7

https://oversight.heritage.org/App.D(09.25.24_Zelensky_Visit_Letter_to_Austin).pdf ............... 7

https://oversight.heritage.org/App.E(09.25.24-Letter-to-Merrick-Garland-re-Zelensky-Visit).pdf7

https://oversight.heritage.org/App.F(Speaker_Johnson_Letter_to_Zelensky_in_re_Scranton_Visi t).pdf ............................................................................................................ 7

Fred Lucas, *As More Trains Derail, Heritage Foundation Asks Court to Force EPA to Release Information on Ohio Disaster*, The Daily Signal (Mar. 30, 2023), https://www.dailysignal.com/2023/03/30/as-more-trains-derail-heritage-foundation-asks-court-to-force-epa-to-release-information-on-ohio-disaster/ (last visited Oct. 16, 2024); ....... 17

Mike Howell, *What Residents of Hawaii Can Learn From Biden's Response to Another Disaster in Ohio, The Heritage Foundation* (Aug. 23, 2023), https://www.heritage.org/environment/commentary/what-residents-hawaii-can-learn-bidens-response-another-disaster-ohio (last visited Oct. 16, 2024); .................................. 17

ProPublica, *Heritage Foundation Staffers Flood Federal Agencies With Thousands of Information Requests*, https://www.propublica.org/article/have-government-employees-mentioned-climate-change-voting-or-gender-identity-the-heritage-foundation-wants-to-know (last visited Oct. 17, 2024). ................................................................................................... 17

\* The Daily Signal, *Mike Howell Investigative Columnist*, https://www.dailysignal.com/author/mike-howell/ (last visited Oct. 16, 2024). ................ 16, 27

The Heritage Foundation, https://heritage.org (last visited Oct. 16, 2024) .................................. 17

The Oversight Project, https://heritage.org/oversight (last visited, Oct. 16, 2024). ..................... 17

**INTRODUCTION**

The Freedom of Information Act ("FOIA") provides simple and clear procedures for those who seek records from their government. In the ordinary course, agencies will provide documents in a roughly first-in, first-out basis. In extraordinary situations, an agency will grant expedited processing and produce information "as soon as practicable." Meanwhile, if a requestor is aggrieved by a denial or delay in responding to its request for production or expedition, Congress has authorized rapid suit in federal court to litigate the controversy. Indeed, just 10 days after a proper request for expedition, the requestor may litigate the propriety of the expedition determination. And just 30, rather than the standard 60, days after that, the government must provide its responsive filing. In that way, Congress has balanced the public's right to information against the agencies' limited resources and competing responsibilities.

Plaintiffs Heritage Foundation and Mike Howell (collectively "Heritage") seek to bypass statute, regulation, and all other requestors by rushing to court for a preliminary injunction. It asks this court to order the three agency defendants to expedite the processing of its requests and produce all non-exempt responsive documents by October 25, 2024. And while one agency—the State Department—denied expedition, that is not true of the other two. The Office of Management and Budget ("OMB") approved the request. And the third, sent to the Department of Defense ("DOD") Office of the Secretary of Defense/Joint Staff, was misdirected by Heritage. It was forwarded to the proper office, the Army, a little over a week ago.

Preliminary injunctions are an extraordinary remedy. But filing motions for preliminary injunctions to compel expedited processing of FOIA requests has become for Heritage a mere tactic. A brief search of the dockets of the D.C. District Court shows at least four FOIA

1

preliminary injunction motions in the last 60 days, including the one in this case.[1]    Heritage's strategy seeks to exploit, as a scheduling tool, a procedural mechanism intended only for true emergencies.  It wishes to jump ahead of other requesters who abide by the rules.  The Court should not countenance this tactic.

Heritage, moreover, cannot meet the substantial burden required to justify its requested preliminary injunction.

*First*, Heritage has established no irreparable injury requiring extraordinary intervention. Specifically, Heritage has made no showing that the subject of its FOIA request is "at the forefront of the minds of the American people," Mem. in Supp. of Pls.' Mot. for Prelim. Inj. at 2, ECF No. 5-1 ("PI Mem."), nor that responsive records would lose all value if not produced before the presidential election.  Even accepting that argument to the contrary, and according to its prior preliminary injunction motions, the critical date for "irreparable harm" is not October 25, nor November 5, but rather September 21 – when early voting started.  *See* Mot. for Prelim. Inj., *Heritage Found. v. DHS*, 24-cv-2343-RDM (D.D.C.), ECF No. 8; Mem. in Supp. of Pls.' Mot. for Prelim. Inj. at 3, ECF No. 8-1.  Regardless, Heritage cannot use the upcoming presidential election to claim irreparable harm on every topic that it perceives as politically interesting.  And its recent pattern of seeking extraordinary relief sharply cuts against any possible showing of irreparable harm here.

*Second*, Heritage cannot show a likelihood of success on entitlement to expedition. For urgency, Heritage provided a trickle of articles related to its stated reason for expedition and failed to establish a larger interest by the American public in the topic of its request.  Nor did Heritage

---

[1] *Heritage Found. v. DOJ*, 24-cv-2715-APM; *Heritage Found. v. DHS*, 24-cv-2343-RDM; *Howell v. DHS*, 24-cv-2791-JMC.

provide sufficient evidence that it is *primarily* engaged in disseminating information—as required by statute and regulation. And even all that only applies to the State Department and DOD. OMB *granted* expedited processing and is currently processing Heritage's request on an expedited basis, "as soon as practicable," as the statute requires.

*Third*, even if those factors were close, the combined public interest and balance of the equities prong defeats Heritage's motion. The public interest lies squarely in the fair administration of FOIA, such that all requesters can make use of the statute as Congress intended. Meanwhile, time and again, Heritage seeks an order cutting off other FOIA requestors who have already established entitlement to expedition. Other applicants should not so suffer.

Finally, the Court should grant defendants' partial motion to dismiss the only claim asserted against OMB—for "Wrongful Denial of Expedited Processing." OMB has in fact granted expedition, as Heritage's complaint recognizes, and the statute provides for no more relief than that.

In sum, Heritage has filed an extraordinary motion in an ordinary case—seeking to jump past those waiting in line (expedited and non-expedited) because it has expertise in FOIA litigation and preliminary injunctions. No emergency justifies placing Heritage's request at the front of the line and requiring the production of all non-exempt responsive records by October 25. Heritage's motion should be denied on the merits and the equities.

## BACKGROUND

### I.    Statutory and Regulatory Framework

#### A.    The General FOIA Processing Framework

FOIA directs that federal agencies, "upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules . . . shall make the

records promptly available."  5 U.S.C. § 552(a)(3)(A).  By regulation and statute, agencies ordinarily process FOIA requests on a first-in, first-out basis with regularized rules for the processing and consideration of requests both in the agency and in the courts.

FOIA provides that, in the usual course, an agency shall "determine within 20 days (excepting Saturdays, Sundays, and legal public holidays) after the receipt of any such request whether to comply with such request."  *Id.* § 552(a)(6)(A)(i).  In cases of "unusual circumstances," the agency may do so within 30 working days.  *Id.* § 552 (a)(6)(B)(i).  But regardless, "[i]f the agency has made and communicated its 'determination' in a timely manner, the requester is required to administratively appeal that 'determination' before bringing suit."  *Citizens for Resp. & Ethics in Wash. v. FEC* ("*CREW*"), 711 F.3d 180, 182 (D.C. Cir. 2013).  After that administrative appeal is timely resolved, an aggrieved requestor may then seek judicial review.  *Jud. Watch, Inc. v. DHS*, 895 F.3d 770, 775 (D.C. Cir. 2018).  If the agency does not make a determination within the relevant time period, administrative remedies are deemed exhausted and the requester may file suit.  *CREW*, 711 F.3d at 185.  But "so long as 'the agency is exercising due diligence in responding to the request, the court may retain jurisdiction and allow the agency additional time to complete its review of the records.'"  *Id.* (quoting 5 U.S.C. § 552(a)(6)(C)(i)).

That is the standard process.  In 1996, however, Congress amended FOIA to provide for "expedited processing" of certain categories of requests.  *See* Electronic Freedom of Information Act Amendments of 1996 ("EFOIA"), Pub. L. No. 104-231, § 8, 110 Stat. 3048, 3051–52 (codified at 5 U.S.C. § 552(a)(6)(E)).  Expedition, when granted, entitles requesters to move ahead of the ordinary processing queue, behind earlier-filed expedited requests.  *See Elec. Priv. Info. Ctr. v. DOD* ("*EPIC I*"), 355 F. Supp. 2d 98, 104 (D.D.C. 2004).

When creating this expedition procedure, Congress directed agencies to promulgate

regulations providing for expedited processing of requests for records (i) "in cases in which the person requesting the records demonstrates a compelling need," 5 U.S.C. § 552(a)(6)(E)(i)(I); and (ii) "in other cases determined by the agency." *Id.* § 552(a)(6)(E)(i)(II). Statutorily, "compelling need" means:

> (I) that a failure to obtain requested records on an expedited basis under this paragraph could reasonably be expected to pose an imminent threat to the life or physical safety of an individual; or

> (II) with respect to a request made by a person primarily engaged in disseminating information, urgency to inform the public concerning actual or alleged Federal Government activity.

*Id.* § 552(a)(6)(E)(v); *see Elec. Priv. Info. Ctr. v. DOJ* ("*EPIC III*"), 15 F. Supp. 3d 32, 43 n.6 (D.D.C. 2014).

If a request for expedition is granted, "[a]n agency shall process as soon as practicable any request for records to which the agency has granted expedit[ion]." 5 U.S.C. § 552(a)(6)(E)(iii); 22 C.F.R. § 171.12(d)(4) (State Department) ("[T]he request must be given priority, placed in the processing track for expedited requests, and processed as soon as practicable."); 5 C.F.R. § 1303.40(e)(4) (OMB) (similar); 32 C.F.R. § 286.8(e)(4) (DOD) (similar). If denied, a requestor may seek relief in federal court. For expedited processing specifically, requestors may challenge a denial or failure to grant expedition after 10 days and "judicial review shall be based on the record before the agency at the time of the determination." 5 U.S.C. § 552(a)(6)(E)(iii).

## B.    The Expedited Processing Regulatory Framework

The three agencies that Heritage requested documents from—the State Department, OMB, and DOD—have all promulgated regulations governing processing timelines. 22 C.F.R. § 171.12(d) (State Department); 5 C.F.R. § 1303.40(e) (OMB); 32 C.F.R. § 286.8(e) (DOD). The requester bears the burden of showing that expedition is appropriate. *See Al-Fayed v. CIA*, 254

F.3d 300, 305 n.4 (D.C. Cir. 2001). When expedition is approved, the requests go into a special track where each request must be processed "as soon as practicable." 5 U.S.C. § 552(a)(6)(E)(iii). And the agencies have 10 calendar days to respond to a proper request. *See id.* § 552(a)(6)(E)(ii)(I).

State and DOD have nearly identical regulatory requirements for the statutory category relevant here—the alleged dissemination of urgently needed information by a person primarily engaged in that activity. 22 C.F.R. § 171.12(d)(1)(ii) (State Department); 32 C.F.R. § 286.8(e)(1)(i)(B) (DOD). OMB's regulation is different. Its rules do not require that a requestor be primarily engaged in disseminating information. Instead, "an urgency to inform the public about an actual or alleged Federal Government activity" or "*possible* questions, in a matter of widespread and exceptional public interest, about the Government's integrity which affect public confidence" is all that need be shown. 5 C.F.R. § 1303.40(e)(1)(ii), (iv) (emphasis added).[2]

## II.  Procedural Background

### A.  Heritage's Requests for Records

On September 25, 2024, Heritage submitted FOIA requests to the State Department, OMB, and the DOD Office of the Secretary of Defense/Joint Staff. Compl. ¶ 14, Exs. 1–3. Each request identically sought: "All records relating to Ukrainian President Volodymyr Zelenskyy's visit to the Scranton Army Ammunition Plant in Scranton, PA on September 23, 2024, including ethics guidance, inter- and/or intra-governmental clearances, final agency plans, and excluding all

---

[2] The agencies have also generated their own unique categories when there may be harm to due process rights or humanitarian interests. 22 C.F.R. § 171.12(d)(1)(iii) (State Department); 5 C.F.R. § 1303.40(e)(1)(iii) (OMB); 32 C.F.R. § 286.8(e)(1)(ii) (DOD). And each has promulgated a subsection mirroring the statutory category of imminent threat to life or physical safety. 22 C.F.R. § 171.12(d)(1)(i) (State Department); 5 C.F.R. § 1303.40(e)(1)(i) (OMB); 32 C.F.R. § 286.8(e)(1)(i)(A) (DOD). None of these categories is at issue here.

national security information or similar classified information and information relating to physical security arrangements." Compl. ¶ 15, Exs. 1–3 at 1. Heritage requested documents for the entirety of 2024 up until the time of its request. Compl. Exs. 1–3 at 1.

### B.    Heritage's Expedition Requests

Each of Heritage's requests included a seven-page letter setting out the request and requesting expedition. Compl. ¶ 18; Exs. 1–3. In support of its request, Heritage provided the following justification:

> Multiple national media outlets have published articles or aired programming regarding President Zelenskyy's visit to the Scranton Ammunition Army Plant. *See* App. A. Moreover, possible questions of ethics violations and violations [of] federal election laws as it pertains to foreign interference and their connection to the presidential election would significantly delay the American voter's right to be informed about what their government is up to and provides necessary information for the American public to decide on their candidate.

Compl. Exs. 1–3 at 7.

To support this allegation of need, Heritage provided each agency links to various pdf documents located on its website. Compl. Exs. 1–6. Four of the six documents are one-to-three-page letters from congressional representatives to federal officials seeking information regarding President Zelenskyy's trip and the fifth is a letter to President Zelenskyy from the Speaker of the U.S. House of Representatives demanding that he fire his ambassador.[3]

---

[3] For ease of access the links (last visited Oct. 16, 2024) are: https://oversight.heritage.org/App.B_9.24.24_Letter_to_Inspector_Generals_on_President_Zelensky_Scranton_PA_Visit.pdf
https://oversight.heritage.org/App.C(09.25.24-Letter-to-White-House-Counsel-re-Zelensky-Visit).pdf
https://oversight.heritage.org/App.D(09.25.24_Zelensky_Visit_Letter_to_Austin).pdf
https://oversight.heritage.org/App.E(09.25.24-Letter-to-Merrick-Garland-re-Zelensky-Visit).pdf
https://oversight.heritage.org/App.F(Speaker_Johnson_Letter_to_Zelensky_in_re_Scranton_Visit).pdf

The remaining document is a hodgepodge of uncategorized articles submitted directly to the agencies without further discussion.[4]  Many are from foreign publications.  *See, e.g.*, App. A at 2 (Thailand); *id.* at 26 (Lebanon); *id.* at 30 (Al Bawaba News From Middle East and Africa); *id.* at 37 (Canada); *id.* at 44 (United Kingdom); *id.* at 55 (same); *id.* at 64 (same); *id.* at 70 (Ukraine); *id.* at 73 (Lebanon); *id.* at 81 (United Kingdom); *id.* at 85 (Canada); *id.* at 92 (same); *id.* at 95 (same); *id.* at 99 (same); *id.* at 101 (same); *id.* at 115 (same); *id.* at 117 (United Kingdom); *id.* at 201 (same).

As for the American articles, the vast majority merely report on the fact of the trip and ongoing war without any discussion of federal impropriety or suggestion of heated public debate. *See, e.g.*, *id.* at 5, 9, 21, 34, 41, 61, 67, 77, 105, 108, 112, 121, 174, 184, 205, 211, 215, 229, 247, 263, 267, 293.  A few others suggest improper actions, but by Governor Josh Shapiro (for his support for Ukraine) or President Zelenskyy (for his statements and actions).  *See, e.g.*, *id.* at 148 (criticizing Governor Josh Shapiro); *id.* at 162 (same); *id.* at 193 (criticizing President Zelenskyy); *id.* at 280 (same).  Of the remaining few articles, a trickle object to, or report on objections to, the federal government's role in the trip.  One comes from the *Post Millennial*, *id.* at 124, and another from a website re-reporting on the *Post Millennial piece*, *id.* at 132.  Two more are from the *Washington Examiner*, *id.* at 143, 343.  The final two are from the website Tri-State Alert, *id.* at 306, and *The Federalist*, *id.* at 312.[5]

---

[4] https://oversight.heritage.org/App.A.pdf ("App. A") (last visited Oct. 16, 2024).  All citations are to the page numbers in the native pdf.

[5] A National Review piece may also have involved suggestions of federal government impropriety, but Heritage only provided the first paragraph without the rest of the article.  App. A at 142.

### C.     The Agencies' Responses and Determinations

#### 1.     *State Department*

On the third working day following Heritage's submission, the State Department denied its request for expedited processing.  In so doing, it explained that Heritage had failed to meet the "compelling need" requirement, which includes a failure to demonstrate that "the information is urgently needed by an individual primarily engaged in disseminating information in order to inform the public concerning actual or alleged Federal government activity."  Compl. Ex. 7 at 1–2.  The State Department offered Heritage an opportunity to administratively appeal the decision, although Heritage has not suggested it has done so in its filings before this Court.  *See id.* at 2.  The State Department also explained that "unusual circumstances" including "the need to search for and collect requested records from other Department offices or Foreign Service posts" required extension of the response period as permitted by statute.  *Id.* (citing 5 U.S.C. § 552(a)(6)(B)(i)–(iii)).  Finally, the State Department offered Heritage points of contact by phone and email to answer questions or if Heritage "would like to narrow the scope or arrange an alternative time frame to speed its processing, or would like an estimated date of completion."  *Id.*

#### 2.     *OMB*

OMB notified Heritage of receipt on the first day following Heritage's submission.  Compl. Ex. 10 at 1.  A little less than a week later, Heritage supplemented its request to OMB (and only OMB) requesting expedition under OMB's regulations, which allow such requests when "[t]here are possible questions, in a matter of widespread and exceptional public interest, about the Government's integrity which affect public confidence."  Compl. Ex. 11 at 1 (quoting 5 C.F.R. § 1303.40(e)(iv)).  The provision does not state that a requestor must be primarily engaged in disseminating information to the public.  The next day, OMB approved Heritage's expedition

request.  Compl. Ex. 12 at 1.  It nevertheless noted that "OMB has a significant backlog of FOIA

requests and we are doing our best to respond to each request as quickly as possible."  *Id.*

### 3.    *DOD Office of the Secretary of Defense/Joint Staff*

As for DOD, there is no centralized processing unit for all the components of the agency.

32 C.F.R. § 286.3(a).  Indeed, as DOD has explained through its regulations implementing FOIA:

"To make a request for records, a requester should write directly to the DoD Component that

maintains the records being sought."  *Id.*[6]  Cognizant that requestors may fail to properly direct

their inquiries, the DOD also provides for redirection of improperly submitted requests.  Thus,

when "records [are] clearly originating with another DoD Component," it "will route the FOIA

request to the appropriate DoD Component."  *Id.* § 286.7(c).  And "[i]n instances involving

misdirected requests that are re-routed . . . the response time will commence on the date that the

request is received by the appropriate DoD Component's FOIA [Requestor Service Center], but in

any event not later than 10 working days after the request is first received by any DoD

Component's FOIA [Requestor Service Center]."  *Id.* § 286.8(a).

Heritage chose one of those components, the DOD Office of the Secretary of Defense/Joint

---

[6] A list of components includes: The OSD and the Office of the Chairman of the Joint Chiefs of Staff and the Joint Staff, Department of the Army, Department of the Navy, Department of the Air Force, Armed Services Board of Contract Appeals, Defense Commissary Agency, Defense Contract Audit Agency, Defense Contract Management Agency, Defense Finance and Accounting Service, Defense Health Agency, Defense Information Systems Agency, Defense Intelligence Agency, Defense Logistics Agency, Defense Counterintelligence and Security Agency, Defense Technical Information Center, Defense Threat Reduction Agency, Joint Personnel Recovery Agency, DOD Education Activity, National Geospatial-Intelligence Agency, National Guard Bureau, National Reconnaissance Office, National Security Agency/Central Security Service, Office of the Inspector General of the Department of Defense, United States Africa Command, United States Central Command, United States Cyber Command, United States European Command, United States Northern Command, United States Indo-Pacific Command, United States Southern Command, United States Space Command, and United States Space Force, United States Special Operations Command, United States Strategic Command, and United States Transportation Command.  32 C.F.R. § 286.3(a).

Staff, through a dropdown menu when it submitted its request. Compl. Ex. 13 at 1. The DOD Office of the Secretary of Defense/Joint Staff notified Heritage that its request was received the same day Heritage sent its request. *Id.* Eight working days later, that DOD office sent Heritage a letter explaining that "your request was misdirected to this office for processing." Compl. Ex. 14 at 1. Pursuant to DOD regulations, the office then forwarded the request to "the United States Army, which operates its own FOIA program, [which] would have cognizance over the information you have requested." Compl. Ex. 14 at 1. It also provided points of contact for the Army's FOIA program. *Id.*

### D.    Heritage's Suit

Two days after it received the notification from the DOD Office of the Secretary of Defense/Joint Staff, on October 9, Heritage filed suit in this Court on the denial of expedition. At that point, 10 working days and 14 calendar days had elapsed since its initial submission.

Heritage pled one claim for relief, "Wrongful Denial of Expedited Processing" under 5 U.S.C. § 552. Compl. ¶¶ 45–56. For the State Department, it claims wrongful denial of expedition and for DOD it states, "DoD did not rule on Plaintiffs' application for expedited processing." *Id.* ¶¶ 49, 51. As to OMB, it admits the agency "granted expedited processing" but claims "Defendants have failed to *actually* expedite the Requests by processing them 'as soon as practicable.'" *Id.* ¶¶ 50, 52 (citation omitted). It provides no explanation as to the basis of this allegation about OMB. *See id.* ¶¶ 29–37.

Two days after filing its complaint, Heritage moved for preliminary injunctive relief. Mot. for Preliminary Injunction, ECF No. 5 ("PI Mot."); *see also* PI Mem. For relief, Heritage asks that the Court compel the State Department and DOD "to process" its FOIA requests "on an expedited basis." PI Mot. at 1. It further asks the Court to order production of "all non-exempt records

responsive to Plaintiffs FOIA Requests . . . by October 25, 2024." *Id.*

**ARGUMENT**

**HERITAGE'S MOTION FOR PRELIMINARY INJUNCTION SHOULD BE DENIED AND DEFENDANTS' PARTIAL MOTION TO DISMISS SHOULD BE GRANTED**

**I.    Obtaining a Mandatory Preliminary Injunction is a Heavy Burden**

As a general matter, "[i]t is rare that *any* preliminary relief is appropriate in a FOIA case." *Brennan Ctr. for Just. at NYU Sch. of Law v. Dep't of Com.*, 498 F. Supp. 3d 87, 92 (D.D.C. 2020) (Kelly, J.).  That makes sense.  "A preliminary injunction is an extraordinary and drastic remedy" and "is never awarded as of right."  *Munaf v. Geren*, 553 U.S. 674, 689–90 (2008) (citation omitted).  And while Heritage cites to some cases where preliminary relief was granted, many featured distinguishable unique circumstances, and all were from four or more years ago. Accordingly, district courts have routinely rejected motions seeking an expedition order, or date certain, through the preliminary injunction vehicle.  *See, e.g.*, *N.Y. Times Co. v. Def. Health Agency*, No. 21-cv-566-BAH, 2021 WL 1614817, at *1 (D.D.C. Apr. 25, 2021) (denying preliminary injunction); *Heritage Found. v. EPA* ("*Heritage I*"), No. 23-748-JEB, 2023 WL 2954418, at *6 (D.D.C. Apr. 14, 2023) (same), *appeal dismissed*, 2023 WL 8116008 (D.C. Cir. Nov. 17, 2023); *Heritage Found. v. DOJ* ("*Heritage II*"), No. 23-cv-1854-DLF, 2023 WL 4678763, at *5 (D.D.C. July 19, 2023) (same), *appeal dismissed as moot*, 2023 WL 6884264 (D.C. Cir. Oct. 16, 2023).

A movant may be awarded such an "extraordinary remedy" only "upon a clear showing" that it is "entitled to such relief."  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008).  In the case of an expedited processing FOIA suit, it takes more than "a run-of-the-mill case" to establish that kind of relief.  *See Brennan Ctr.*, 498 F. Supp. 3d at 92.  To establish entitlement to

12

a preliminary injunction, a movant must demonstrate the traditional *Winter* factors: (1) it is likely to succeed on the merits; (2) it is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in its favor; and (4) an injunction is in the public interest. 555 U.S. at 20.  The last two factors merge when the government is the opposing party.  *Guedes v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 920 F.3d 1, 10 (D.C. Cir. 2019).

As this Court has previously recognized, "it is clear that failure to show a likelihood of irreparable harm remains, standing alone, sufficient to defeat the motion."  *Brennan Ctr.*, 498 F. Supp. 3d at 96 (quoting *Navajo Nation v. Azar*, 292 F. Supp. 3d 508, 512 (D.D.C. 2018)).  The same is true for "likelihood of success on the merits," without which "a plaintiff is not entitled to a preliminary injunction."  *Id.*  Finally, where, as here, a mandatory injunction is requested—i.e., an injunction that "would alter, rather than preserve, the status quo by commanding some positive act"—"the moving party must meet a higher standard than in the ordinary case by showing *clearly* that he or she is entitled to relief or that *extreme or very serious damage* will result from the denial of the injunction."  *EPIC III*, 15 F. Supp. 3d at 39 (emphasis added) (citation omitted).

## II. Heritage Has Not Demonstrated It Will Suffer Irreparable Harm.

"[T]he basis of injunctive relief in the federal courts has always been irreparable harm."  *CityFed Fin. Corp. v. Off. of Thrift Supervision*, 58 F.3d 738, 747 (D.C. Cir. 1995) (quoting *Sampson v. Murray*, 415 U.S. 61, 88 (1974)).  It "is a stopgap measure, generally limited as to time, and intended to maintain a status quo or 'to preserve the relative positions of the parties until a trial on the merits can be held.'"  *Sherley v. Sebelius*, 689 F.3d 776, 781–82 (D.C. Cir. 2012) (quoting *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981)).  To constitute irreparable injury, the harm must be "certain and great, actual and not theoretical, and so imminent that there is a clear and present need for equitable relief to prevent irreparable harm."  *League of Women Voters*

13

*of the U.S. v. Newby*, 838 F.3d 1, 7–8 (D.C. Cir. 2016) (cleaned up).  Further, courts should be cautious to avoid giving "a party essentially the full relief [it] seeks on the merits" through a preliminary injunction.  *Dorfmann v. Boozer*, 414 F.2d 1168, 1173 n.13 (D.C. Cir. 1969).

When determining whether a plaintiff has made a sufficient showing, the key question is whether there is "irreparable harm" to the *plaintiff* itself.  Because "injuries to third parties are not a basis to find irreparable harm" Heritage cannot merely point to some nascent interest of nonparty members of the public to justify relief.  *See Alcresta Therapeutics, Inc. v. Azar*, 318 F. Supp. 3d 321, 326 (D.D.C. 2018).  Instead, "[Heritage] must show irreparable harm to [its] own role in the public conversation."  *See Heritage I*, 2023 WL 2954418, at *6 (denying preliminary injunction in FOIA suit).  After all, "as a general rule, American courts of equity did not provide relief beyond the parties to the case."  *Trump v. Hawaii*, 585 U.S. 667, 717 (2018) (Thomas, J., concurring).  Courts often reject theories of equitable relief premised on "a matter of public and not of individual concern."  *Massachusetts v. Mellon*, 262 U.S. 447, 487 (1923); *see also Trump*, 585 U.S. at 719 (Thomas, J., concurring).

Underscoring this high standard is Heritage's pattern of seeking injunctive relief in FOIA cases.  If countenanced, Heritage's strategy would wreak havoc on agencies and the courts.  "Rather than spending . . . time methodically developing arguments and evidence in cases" the Department and agencies have been and will be "forced to rush from one preliminary injunction . . . to another, . . . all based on expedited briefing and little opportunity for the adversarial testing of evidence."  *See DHS v. New York*, 140 S. Ct. 599, 600 (2020) (Mem) (Gorsuch, J., concurring) (discussing universal injunctions).  Courts in this district, already overburdened with FOIA cases, will under the rules be forced to delay other important work to consider purported emergencies that in reality are simply posturing for procedural advantage.

14

Because "the credibility of a requestor is a relevant consideration" when considering expedition, *see Al-Fayed*, 254 F.3d at 310 (cleaned up), Heritage should have to make a particularly strong showing of irreparable harm here given its regular practice of seeking extraordinary, emergency relief.

Heritage offers two arguments for why denial of preliminary injunctive relief will cause irreparable harm.  First, it contends that a showing of entitlement to expedited processing itself automatically satisfies irreparable harm.  PI Mem. at 33–39.  Second, it argues that expedited processing is necessary to provide information to the American public in advance of the November 2024 presidential election.  *Id.* at 39–41.  Neither establishes that Heritage will be irreparably harmed if it does not receive non-exempt responsive records by October 25.

On the first point, entitlement to expedited processing alone is not sufficient to establish that "certain and great," actual, imminent harm will result from denial of emergency relief.  *See League of Women Voters*, 838 F.3d at 7–8.  Contrary to Heritage's contention, *see* PI Mem. at 36 ("[W]rongful denial of a statutory right to expedited processing necessarily causes irreparable harm."), nothing in FOIA suggests this result flows from the "statutory right" to expedited processing.  Instead, the statutory scheme contains its own remedial remedy for a denial of expedited processing; one that authorizes the filing of a complaint within 10 calendar days from a proper request.  Courts have routinely rejected the notion that because "[t]ime cannot be wound back" entitlement to expedition means instant irreparable harm.  *Heritage I*, 2023 WL 2954418, at *5 (citation omitted).  "Under [Heritage's] logic, any requester who suffers even a one-day delay in any FOIA case could show irreparable harm."  *Id.*  That is obviously not so.  Entitlement to extraordinary relief requires something extraordinary.  This Court has similarly looked beyond statutory entitlement, and instead asked whether a case is the "rare FOIA case[]. . .  involving

ongoing proceedings of national importance, . . . [where] delay in processing of a FOIA request would cause irreparable harm." *Brennan Ctr.*, 498 F. Supp. 3d at 101 (cleaned up).

That leads to the second basis on which Heritage claims irreparable harm. On its telling, Heritage will suffer irreparable harm without both expedition and release of all non-exempt responsive records by October 25 because of the upcoming presidential election. PI Mem. at 39–41. To demonstrate irreparable harm on this basis, Heritage must show that something about the lack of expedition, or a date certain for production of all non-exempt responsive records, will harm its "own role in the public conversation." *See Heritage I*, 2023 WL 2954418, at *6. Heritage has made no such showing and its past conduct confirms it cannot demonstrate that harm.

First, consider the links Heritage placed in its request for expedition submitted to the agencies. Those links contain Mr. Howell's author profile on *The Daily Signal* and the Oversight Project's X account. Compl. Exs. 1–3 at 4. The former indicates that Mr. Howell has not published a piece for over eight months.[7] And the Oversight Project's X account has tweeted once since August 1st of this year.[8]

Second, Heritage routinely seeks expedition through FOIA litigation with and without motions for preliminary injunctions.[9] But, neither the Heritage Foundation nor its Oversight

---

[7] The Daily Signal, *Mike Howell Investigative Columnist*, https://www.dailysignal.com/author/mike-howell/ (last visited Oct. 16, 2024).

[8] @OversightPR, X, https://x.com/oversightpr (last visited Oct. 16, 2024).

[9] *See, e.g.*, Compl. ¶¶ 8-9, 11, *Heritage Found. v. Consumer Prod. Safety Comm'n*, No. 23-cv-3783-RBW (D.D.C. Dec. 20, 2023), ECF No. 1 (expedition sought of request for documents related to Commission's work regarding gas stoves); Compl. ¶¶ 1, 14, *Heritage Found. v. CIA*, No. 23-cv-3810-TJK (D.D.C. Dec. 22, 2023), ECF No. 1 (expedition sought of request for records regarding "the CIA's COVID Discovery Team[]"); Compl. ¶¶ 8, 10, 12, *Heritage Found. v. DOJ*, No. 23-cv-733-RBW (D.D.C. Mar. 17, 2023), ECF No. 1 (expedition sought of request for records related to 18 U.S.C. § 1507 and protests at Supreme Court justices' homes); Compl. ¶¶ 10, 12, *Heritage Found. v. DOJ*, No. 24-cv-0200-DLF (D.D.C. Jan. 23, 2024), ECF No. 1 (expedition

Project appears to offer a website or portal where the public may access records received in response to FOIA requests.[10]  Consider as an example *Heritage Foundation v. EPA*, in which an agency's rolling productions of responsive records were nearly complete by November 2023, and the agency issued its final production of responsive records by February 2024.  *See* Joint Status Report, No. 23-cv-00748-JEB (D.D.C. Nov. 21, 2023), ECF No. 19; Joint Status Report (Feb. 16, 2024), ECF No. 21.  Neither the Heritage Foundation, the Oversight Project, nor *The Daily Signal* appears to have publicly posted any records obtained as a result of its FOIA request, nor reporting based on their successfully being obtained.  Heritage has, however, publicly posted an article about the filing of the lawsuit and an additional piece discussing ongoing litigation to obtain an injunction.  *See* Fred Lucas, *As More Trains Derail, Heritage Foundation Asks Court to Force EPA to Release Information on Ohio Disaster*, The Daily Signal (Mar. 30, 2023), https://www.dailysignal.com/2023/03/30/as-more-trains-derail-heritage-foundation-asks-court-to-force-epa-to-release-information-on-ohio-disaster/ (last visited Oct. 16, 2024); Mike Howell, *What Residents of Hawaii Can Learn From Biden's Response to Another Disaster in Ohio, The Heritage Foundation* (Aug. 23, 2023), https://www.heritage.org/environment/commentary/what-residents-hawaii-can-learn-bidens-response-another-disaster-ohio (last visited Oct. 16, 2024); *see*

---

sought for records "relied upon" by Attorney General in making statements about USAO-Delaware's investigation of Hunter Biden); Compl. ¶¶ 8-9, 12, *Heritage Found. v. DOJ*, No. 24-cv-645-DLF (D.D.C. Mar. 6, 2024), ECF No. 1 (expedition sought of request for records relied upon by Special Counsel Hur for certain passages of Report, relating to President Biden's "memory and mental faculties"); *see also* ProPublica, *Heritage Foundation Staffers Flood Federal Agencies With Thousands of Information Requests*, https://www.propublica.org/article/have-government-employees-mentioned-climate-change-voting-or-gender-identity-the-heritage-foundation-wants-to-know (last visited Oct. 17, 2024).

[10] *See generally* The Heritage Foundation, https://heritage.org (last visited Oct. 16, 2024); The Oversight Project, https://heritage.org/oversight (last visited, Oct. 16, 2024).

*also United States v. Whitton*, 534 F. Supp. 3d 32, 47 n.7 (D.D.C. 2021) ("The Court takes judicial notice of the existence of news articles.").

Stepping back from the specifics, it is Heritage's burden to demonstrate that it will be irreparably harmed through lack of expedition. Its request to the agency and its moving papers fail to provide any evidence of harm. *See Al-Fayed*, 254 F.3d at 310. Further, Heritage's specific request for an order of release by October 25 is exceptionally weak. Heritage contends that this date is necessary to receive responsive documents prior to the general election, but in other cases it has argued that September 21 is the latest date by which it can inform the public because early voting began then. *See* Mot. for Prelim. Inj., *Heritage Found. v. DHS*, 24-cv-2343-RDM, ECF No. 8; Mem. in Supp. of Pls.' Mot. for Prelim. Inj. at 3, ECF No. 8-1. September 21 has already passed, so by Heritage's telling irreparable harm has already occurred.

Nor is October 25 a realistic date. Assuming the court can adjudicate this motion prior to that date, and assuming it granted a preliminary injunction (which it should not), and assuming that the government determined not to appeal, the agencies would still need to conduct searches and process records for production. And that does not include time to adjudicate any redactions. The professed need to disseminate information before the general election is a red herring, as well as entirely unrealistic.

In any event, "the court must decide whether the [professed] harm will *in fact* occur" before granting preliminary injunctive relief. *Wis. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985) (per curiam). But Heritage relies on abject speculation. As to OMB, its request is already granted, and in the expedited processing queue. Heritage has provided no evidence suggesting its request has been, or will be, delayed, or otherwise requires judicial intervention. And if the Court orders expedition for either the State Department or DOD request, then expedited processing will begin

18

that same day.  That is "all the statute requires."  *Heritage II*, 2023 WL 4678763, at *5 (finding no irreparable injury).  All Heritage can then rely on is the *possibility* that its request might not be completed "as soon as practicable" or within the time it wishes.  But the Supreme Court has already rejected a "possibility standard" in this context.  *See Winter*, 555 U.S. at 22.  And with just speculative possibility to rely on, Heritage cannot receive preliminary injunctive relief for an order directing the agencies to produce all non-exempt responsive records by a date certain.

The bottom line is straightforward.  Heritage wants expedition and responsive records now but has provided none of the "certain and great, and actual and not theoretical" evidence required. *Brennan Ctr.*, 498 F. Supp. 3d at 101 (citation omitted).  The fact that a presidential election is upcoming does not mean every FOIA request about government activity may receive expedited treatment and a court-ordered date certain.  And Heritage has not shown the subject of its request is so linked to ongoing proceedings of national importance as to justify the extraordinary equitable relief it asks for.  Particularly given its recent pattern of motions for preliminary injunctions in FOIA cases, this Court should deny Heritage's latest motion for a preliminary injunction.

## III. Heritage Is Unlikely to Succeed on the Merits

### A. Heritage Has Not Demonstrated Likelihood of Success for Compelling Need

The merits review of an expedition decision is conducted de novo on the record before the agency at the time of its determination.  *Al-Fayed*, 254 F.3d at 308, 311 & n.11; 5 U.S.C. § 552(a)(6)(E)(iii).  Heritage must establish a "compelling need" for expedited processing.  And it only posits that the second statutory avenue for compelling need—"with respect to a request made by a person primarily engaged in disseminating information, urgency to inform the public concerning actual or alleged Federal Government activity"—justifies expedition.  5 U.S.C. § 552(a)(6)(E)(v)(II).  But Heritage's evidence neither demonstrates eligibility for expedition, nor

the necessary urgency to inform the public of the information it seeks.  Each independently bars its request.

On both points, the leading D.C. Circuit case, *Al-Fayed*, provides the framework, and underscores why Heritage has failed to demonstrate a likelihood of success.  After extensive discussion, the D.C. Circuit considered possible readings of the statutory terms—both broad and narrow.  It rejected the former.  Instead, courts are called to use "a narrow application" of the compelling need categories.  *Al-Fayed*, 254 F.3d at 310.

The reason for constraint is clear.  "Given the finite resources generally available for fulfilling FOIA requests, unduly generous use of the expedited processing procedure would unfairly disadvantage other requestors who do not qualify for its treatment." *Id.* (citation omitted). Thus "the specified categories for compelling need are intended to be narrowly applied." *Id.* (cleaned up).  "[A]n unduly generous approach would also disadvantage those requestors who do qualify for expedition, because prioritizing all requests would effectively prioritize none." *Id.* (summarizing legislative findings).

### 1.  Heritage Has Not Shown an Urgency to Inform

As in *Al-Fayed*, this case can be resolved on the urgency-to-inform prong.  *See id.* at 311. In denying expedition there, the Circuit articulated three factors guiding an urgency analysis.  "(1) whether the request concerns a matter of current exigency to the American public; (2) whether the consequences of delaying a response would compromise a significant recognized interest; and (3) whether the request concerns federal government activity." *Id.* at 310.  The government does not deny that Heritage's *request* concerns federal government activity, although the visit itself was that of a foreign leader.  That means, however, that the substance of what Heritage seeks must flow specifically from the federal element of the trip.  And it has failed to show that the first and second

factor match the topic it seeks through FOIA—federal government records about its role in the visit by President Zelenskyy.  Accordingly, Heritage cannot demonstrate a likelihood of success on the merits.

<u>Matter of Current Exigency to the American Public</u>

First and foremost, the record before the agency does not support Heritage's request as involving a "a matter of current exigency to the American public."  PI Mem. at 16.  As Heritage puts it, the reason for exigency is as follows: "ongoing public debate regarding whether the Biden-Harris Administration acted improperly concerning President Zelensky's Scranton visit."  *Id.* at 17.  The Court should thus look at the evidence in the record and determine whether Heritage has shown that the question is of current exigency to the American public.  *See Al-Fayed*, 254 F.3d at 311 ("There is no evidence in the record that there is substantial interest, either on the part of the American public or the media, in this particular aspect of plaintiffs' allegations."); *see also EPIC I*, 355 F. Supp. 2d at 102 ("The case law makes it clear that only public interest in the specific subject of a FOIA request is sufficient to weigh in favor of expedited treatment.").

Consider, for example, a successful showing on expedition.  In a paradigmatic case, *Protect Democracy Project, v. DOD* ("*Protect Democracy I*"), a requestor sought documents after a missile strike in Syria, and expedited processing on the basis that "'the President's decision to initiate military action is of the utmost importance to the public,' and that 'whether the President has the legal authority to launch [such] a military strike' is similarly critical."  263 F. Supp. 3d 293, 299 (D.D.C. 2017) (citation omitted).  There, "some of the nation's most prominent news outlets . . . paid [attention] *both* to the April 6 strike and its legality."  *Id.* (emphasis added).  Heritage provided no such similar showing here.

Five of the six documents submitted by Heritage are letters from congressional representatives either to federal officials or President Zelenskyy.  *Supra* Background Part II.B.  But mere demands from politicians do not necessarily support a showing of exigency.  Congress has its own mechanisms for obtaining documents.  It cannot be that any FOIA request which references a congressional request automatically qualifies as showing an exigency to the American public.  *See Al-Fayed*, 254 F.3d at 310 (requiring "narrow application" of the standard).  Otherwise, the expedition standard would be rendered meaningless, a function of simple political partisanship.

Next comes Heritage's omnibus listing of various articles.  *Supra* Background Part II.B; *see* App. A.  The Court should first disregard the many foreign news articles that do not shed light on an *American* interest.  *Supra* Background Part II.B.  And even turning to the domestic articles, the vast majority merely report on the fact of the visit and ongoing war without discussion of alleged impropriety, by the current administration or otherwise.  *See, e.g.*, App. A at 5, 9, 21, 34, 41, 61, 67, 77, 105, 108, 112, 121, 174, 184, 205, 211, 215, 229, 247, 263, 267, 293.  The few media articles that feature criticism of Governor Josh Shapiro or President Zelenskyy also fail to justify Heritage's request for expedition because they do not demonstrate public interest in *federal* activities.  *See, e.g.*, *id.* at 148 (criticizing Governor Josh Shapiro); *id.* at 162 (same); *id.* at 193 (criticizing President Zelenskyy); *id.* at 280 (same).

That leaves a trickle of articles by five media outlets or web blogs criticizing, or reporting on criticism, of the federal government's role in the visit.  And even those largely lack any suggestion of larger public debate.  One reports on congressional oversight of the trip.  *Id.* at 143.  Three of the other five mostly recycle screenshots of the same few tweets alongside descriptions

of the event.  *Id.* at 124, 132, 312.  And the remaining two, when they touch on the question, do so almost entirely by repeating quotes from one or two members of Congress.  *Id.* at 306, 343.

In sum, while Heritage's submissions show short-term domestic media attention on the trip, and general interest in the war in Ukraine, the focus of Heritage's reason for exigency—public debate as to alleged impropriety by the federal government—is little seen.  This is thus nothing like those cases where news outlets paid heed to both an event, and the federal government's role, in a manner that justified expedition.  *See Protect Democracy I*, 263 F. Supp. 3d at 299.  And "[i]t is neither the Court's nor the agency's responsibility to connect the dots for plaintiffs . . .  by presuming that interest in a general topic necessarily indicates interest in a specific subpart of that topic."  *EPIC I*, 355 F. Supp. 2d at 104.  Certainly, the rule cannot be otherwise.  If it were true that general news articles about an event automatically qualified an applicant for exigency, it would effectively "prioritiz[e] all requests."  *Al-Fayed*, 254 F.3d at 310.  Yet the D.C. Circuit has flatly forbidden such an "unduly generous" view of the standard.  *Id.*

Heritage failed to connect its request for documents to "substantial interest, either on the part of the American public or the media, in th[e] particular aspect of [Heritage's] allegations."  *See id.* at 311.  Having failed to supply the agencies with appropriate support, Heritage is not likely to prevail on the merits of its expedition claim.

*Significant Recognized Interest*

Heritage has also failed to meet the significant recognized interest prong.  To start, "[t]he public's right to know, although a significant and important value, would not by itself be sufficient to satisfy this standard."  *See id.* at 310 (citation omitted).  Something more is needed.  Heritage provides three possibilities for that extra ingredient: "[t]he requested records: (1) are themselves the very content of breaking news coverage; (2) inform the American Voter about the Biden-Harris

Administration's possible misconduct concerning President Zelensky's visit within 42 days of the General Election; and (3) are topics of congressional oversight with a fast approaching end date." PI Mem. at 21.

First, Heritage's description of "massive public interest in understanding what is occurring *now*" such as "What Hatch Act violations were considered?" "What ethics guidance did the senior leadership follow or dismiss?" or "Did the Biden-Harris Administration review President Zelensky's talking points?" is entirely unsupported by the record before the State Department and DOD. *See id.* As previously discussed, only a few articles touched on any topic even approaching what Heritage raises to support expedition. Even those don't discuss what Heritage relies on. For example, exactly one mentions "Hatch" and only when quoting a congressional statements. App. A at 143–44. That same article is also the only result for any variation of "ethic-." *See id.* at 144 ("In that case, Republicans say it would be a violation of federal law or ethical guidelines."). No article contains the term "talking points" nor does any use the term "review" in the way described. *See* App. A.

Second, Heritage again focuses on the "Biden-Harris Administration's possible misconduct," alleging that the interests of the "the American Voter" require Heritage to receive responsive records as soon as possible. *See* Pl. Mem. 21. This again is merely a plea for "[t]he public's right to know," which is entirely insufficient to support a preliminary injunction. *See Al-Fayed*, 254 F.3d at 310. Even setting that aside, as described above, Heritage provided little evidence that the American public is truly engaged on the question alleged federal impropriety in connection with President Zelenskyy's visit. This case is therefore wholly unlike those cases where an upcoming event, combined with particular public interest in the federal government's actions, satisfied this prong. *See, e.g.*, *Brennan Ctr.*, 498 F. Supp. 3d at 98–99 ("[T]he 2020 census

and reapportionment processes are currently unfolding stories about federal government activity that are now the subject of public debate and discussion."); *Protect Democracy I*, 263 F. Supp. 3d at 299 ("[I]nformation vital to the current and ongoing debate surrounding the legality of a high-profile government action." (citation omitted)).  The record before the agency fails to show any similar public debate and discussion surrounding the actions of the federal government.  Instead, the record focuses on the fact of the trip, the larger war in Ukraine, and occasional critiques of non-federal officials and President Zelenskyy himself.

Finally, congressional oversight should not be considered a cognizable interest.  After all, "Congress and the President—the two political branches established by the Constitution—have an ongoing relationship that the Framers intended to feature both rivalry and reciprocity."  *Trump v. Mazars USA*, 591 U.S. 848, 854 (2020).  When Congress needs information, it may ask for it using its own processes.  *See Comm. on Judiciary of United States House of Representatives v. McGahn*, 968 F.3d 755, 761 (D.C. Cir. 2020).  Heritage cannot establish an entitlement to expedition merely by pointing to a request by Congress for the same or similar information.

### 2.  Heritage is Not Primarily Engaged in Disseminating Information

Although Heritage's has failed to demonstrate the requisite urgency to succeed on the merits or establish irreparable harm, Heritage, consisting of both the Heritage Foundation and Mr. Howell, has also not shown it is a person "primarily engaged in disseminating information."  That question must be decided on the record before the agency.  *Al-Fayed*, 254 F.3d at 305, 308.  And Heritage provided little support for its assertion in the materials submitted.

Courts in this district have emphasized that they "must be cautious in deeming non-media organizations as persons primarily engaged in information dissemination."  *Energy Pol'y Advocs. v. Dep't of the Interior*, No. 21-cv-1247-JEB, 2021 WL 4306079, at *2 (D.D.C. Sept. 22, 2021)

25

(quoting *Landmark Legal Found. v. EPA*, 910 F. Supp. 2d 270, 275–76 (D.D.C. 2012)).

Organizations other than media organizations and newspapers "have been held to not qualify,"

"unless information dissemination is also their main activity, and not merely incidental to other

activities that are their actual, core purpose." *Allied Progress v. CFPB*, No. 17-cv-686-CKK, 2017

WL 1750263, at *4 (D.D.C. May 4, 2017) (collecting cases).  Similarly, when the requestor is an

individual, dissemination of information need not be the requestor's sole occupation, but it must

be the person's "*main activity*."  *Landmark Legal Found.*, 910 F. Supp. 2d at 276 (citation omitted).

Neither the Heritage Foundation itself nor Mr. Howell qualifies on the record presented to the

agency.

> To start, the entirety of Heritage's statement to the agency on this question is as follows:

> I am making this request as Director of The Heritage Foundation's Oversight
> Project and in my capacity as an investigative columnist for the *Daily Signal*, a
> major news outlet. In my position, I actively gather information of potential interest
> to our *Daily Signal* audience, use my editorial skills to turn raw materials into a
> distinct work, and distribute that work to our Daily Signal audience through
> podcasts or articles. The Oversight Project is an initiative aimed at obtaining
> information via Freedom of Information Act requests and other means in order to
> best inform the public and Congress for the purposes of Congressional oversight.
> Staff members of the Oversight Project routinely appear on television, radio, print,
> and other forms of media to inform the public on salient issues in the national
> debate. The requests and analysis of information are informed by Heritage's deep
> policy expertise.

Compl. Exs. 1–3 at 6–7.  The statement contains no assertion that the Heritage Foundation itself

has the main activity of disseminating information.  While it notes the existence of the "Oversight

Project" and says the initiative is "aimed at obtaining information via Freedom of Information Act

requests and other means in order to best inform the public and Congress for the purposes of

Congressional oversight," *id.*, it provides no detail regarding how central that function is to the

larger Heritage Foundation.  This is fatal to Heritage's argument.

> Consider, for example, the statement in *Landmark Legal Foundation*.  There, informing

the agency that "as part of [the requesting organization's] mission as a tax-exempt, public interest law firm, [the organization] investigates, litigates, and publicizes instances of improper and/or illegal government activity and that among its primary activities is to disseminate to the public about the conduct of governmental agencies" was insufficient. *Landmark Legal Found.*, 910 F. Supp. 2d at 276 (cleaned up). Heritage's statement is even more opaque. It does not suggest that information dissemination is a "main" or "primary" part of the Heritage Foundation's overall mission. Indeed, on its face, the statement suggests the dissemination is incidental to the Heritage Foundation's true function of generating "deep policy expertise." Compl. Exs. 1–3 at 6–7.

That just leaves Mr. Howell. And while Mr. Howell is at least described as "Director" of the Oversight Project and "an investigative columnist for the Daily Signal" the statement provides no representation that dissemination of information is a primary part of his duties. Compl. Exs. 1-3 at 6–7. Nor does Heritage provide corroborating documents or evidence to support the assertion. Indeed, while Heritage provided several links earlier in its request to *The Daily Signal* and the Oversight Project, it did not do so under the heading for its request for expedition. It is little wonder why. At the website page linked in the request, Mr. Howell has not published a piece for over eight months. *Supra* Argument Part II n.7. And the only public-facing Oversight Project link in the request is to its X account, which has tweeted once since August 1st of this year. *Supra* Argument Part II n.8. Indeed, even though a court previously concluded, on the record before that agency, Mr. Howell qualified due to his status at *The Daily Signal*, it considered the Heritage Foundation to be "a trickier call." *Heritage I*, 2023 WL 2954418, at *3. And that Court decided the question without the benefit of eight months without a piece published by Mr. Howell—in a link he provided to the two agencies relevant here. *See generally id.*

On the evidence submitted, Mr. Howell and the Heritage Foundation can, at best, be

described as "*incidentally* engag[ing] in information dissemination." *Landmark Legal Found.*, 910 F. Supp. 2d at 276 (citation omitted).  Given the paucity of evidence, finding either to be in the business of primarily disseminating information "would allow nearly any organization with a website, newsletter, or other information distribution channel to qualify as primarily engaged in disseminating information." *See id.*  Given the narrow reading that must be given to compelling need, that cannot be right under the statute. *See Al-Fayed*, 254 F.3d at 310.

**B.      Heritage Is Not Entitled to Processing of Records on a Date Certain**

Even if the Court were to determine that Heritage is likely to succeed on the merits of its expedition claim (which it should not), the remedy is for the agencies to process Heritage's request as soon as practicable.  5 U.S.C. § 552(a)(6)(E)(iii).  There is no provision for production of all non-exempt responsive records on a particular date of Heritage's choosing.  "All the statute requires is that, once a request is expedited, the agency process it as soon as practicable." *Heritage II*, 2023 WL 4678763, at *5.  Indeed, there is "no authority for the proposition that *within* the category of expedited requests, [an agency] has an obligation to prioritize productions based on their 'gravity and urgency.'" *Id.*  Instead, "an agency faces the same obligation for 'any' expedited request: namely, to process it 'as soon as practicable.'" *Id.* (quoting 5 U.S.C. § 552(a)(6)(E)(iii)) (emphasis omitted).

Even when this Court previously ordered a date certain, it rejected the requestor's chosen date. *Brennan Ctr.*, 498 F. Supp. 3d at 100.  And the Court recognized that courts in this District to set a high threshold for a requestor to ever obtain a date certain.  As this Court explained, "[t]hey have done so to avoid the records requested becoming stale after that date, and thus being 'of little value' to 'inform the public of ongoing proceedings of national importance.'" *Id.* at 99 (quoting *Ctr. for Pub. Integrity v. DOD*, 411 F. Supp. 3d 5, 12 (D.D.C. 2019)).  But, for the reasons

28

previously discussed, there is little evidence of national importance related to Heritage's FOIA request. *Supra* Discussion Part III.A. Even if the Court concluded that the articles related to President Zelenskyy's visit are sufficient to sustain Heritage's expedition request, the evidence cannot meet the high bar set in *Brennan Center* for requiring processing on a date certain. And for the same reasons discussed in connection with irreparable harm, the imminency of the presidential election cannot be enough when a plaintiff has failed to establish the requisite public interest in the requested information. *See supra* Argument Part II.

## IV.   The Public Interest and Balance of Equities Weigh Against a Preliminary Injunction.

Along with alleged harm to the plaintiff, the Court must consider whether a preliminary injunction of the sort demanded here would be in the public interest or harm nonlitigants. *See Al-Fayed*, 254 F.3d at 303. To do so, the Court must "balance the competing claims of injury and . . . consider the effect on each party of the granting or withholding of the requested relief." *Winter*, 555 U.S. at 24 (citation omitted). Where Heritage seeks both expedition and a date certain for the production of non-exempt responsive records, "issuing the requested injunction would just allow Heritage to jump over other FOIA requesters in line." *Heritage I*, 2023 WL 2954418, at *6. Thus, "the Court must consider the inherent tradeoffs involved in ordering an agency to complete a particular FOIA request ahead of the rest of the queue—all without the benefit of hearing from the nonparty requestors whose productions would be delayed." *Heritage II*, 2023 WL 4678763, at *5.

A successful motion here will ultimately mean those requestors who followed the regular process will be cut in line and forced to wait longer for their own expedited productions. These nonparties, who have had no chance to weigh in, should garner consideration as the Court weighs the equities of an injunction.

Finally, undersigned counsel understands that OMB has approximately 16 current requests

in the expedited queue, about five of which are related to the upcoming election.  Furthermore, it understands the Army to have approximately 61 requests in its expedited queue and the State Department to have approximately 327 requests in its expedited queue.  Regardless of the specifics, ordering production of all non-exempt responsive documents by a date certain "would almost certainly f[orce] additional delays" on those currently in queue, whatever the number.  *See N.Y. Times*, 2021 WL 1614817, at *10.  That is in addition to delaying processing of the requests pending in the non-expedited queue.  The public interest and balance of harms weighs sharply in favor of the orderly administration of FOIA, and against litigation gamesmanship.

## V.    Defendants' Cross-Motion to Dismiss Should be Granted

Heritage both fails to allege standing for its claim asserted against OMB and fails to state a claim for relief.  The Court should accordingly dismiss the complaint against OMB.

"In resolving a motion to dismiss under Rules 12(b)(1) or 12(b)(6), the complaint is the crux of the Court's inquiry."  *Student Loan Servicing All. v. Dist. of Columbia*, 317 F. Supp. 3d 89, 92 (D.D.C. 2018).  On a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1), the plaintiff bears the burden of establishing the court's subject-matter jurisdiction.  *Zevallos v. Obama*, 10 F. Supp. 3d 111, 116 (D.D.C. 2014) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)), *aff'd*, 793 F.3d 106 (D.C. Cir. 2015).  "[A] plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief."  *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021).  That is because "[u]nder Article III, federal courts do not adjudicate hypothetical or abstract disputes."  *Id.*

A Rule 12(b)(6) motion tests whether a complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  While a complaint "does not need detailed factual allegations," it "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.  For purposes of a Rule 12(b)(6) motion, the "complaint" also includes matters incorporated therein.  *Hinton v. Corr. Corp. of Am.*, 624 F. Supp. 2d 45, 46 (D.D.C. 2009) ("Matters that are not 'outside' the pleadings a court may consider on a motion to dismiss include 'the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint,' . . . or documents 'upon which the plaintiff's complaint necessarily relies' even if the document is produced not by the plaintiff in the complaint but by the defendant in a motion to dismiss." (citations omitted)).

Under either standard, Heritage's claim against OMB should be dismissed.  The statute Heritage relies on simply states that an "agency shall process as soon as practicable [the] request for records" once expedition is granted.  5 U.S.C. § 552(a)(6)(E)(iii).  "[A]ll the statute requires is that, once a request is expedited, the agency process it as soon as practicable." *Heritage II*, 2023 WL 4678763, at \*5.  And as Heritage's complaint, and the documents attached, make clear, "OMB granted expedited processing."  Compl. ¶ 50; Compl. Ex. 12 at 1.  Its "request has been placed in [OMB's] expedited processing queue."  Compl. Ex. 12 at 1.  Heritage's request was granted, and the expedited treatment began on October 3.  Consequently, at the time its complaint was filed, Heritage had already received the relief the statute provides.  That both defeats standing and demonstrates Heritage has not stated a claim for which relief can be granted.

The only suggestion to the contrary is Heritage's statement in the complaint that, "Defendants have failed to *actually* expedite the Requests by processing them 'as soon as practicable.'"  Compl. ¶ 52 (quoting 5 U.S.C. § 552(a)(6)(E)(iii)); *see also id.* ¶ 36.  But that is

precisely the kind of "mere conclusory statement[]" insufficient to sustain a complaint and defeat a motion to dismiss.  *See Iqbal*, 556 U.S. at 678.  The only claim brought against OMB is for "Wrongful Denial of Expedited Processing."  Compl. ¶¶ 45-56 (First Claim for Relief).  Having failed to allege any factual material supporting that claim, and indeed only providing factual material to the contrary, the Court should dismiss it.

## CONCLUSION

For the foregoing reasons, the Court should deny Heritage's motion for preliminary injunction and grant defendants' partial motion to dismiss.


Dated: October 17, 2024                     Respectfully submitted,

                                            BRIAN M. BOYNTON
                                            Principal Deputy Assistant Attorney General

                                            ELIZABETH J. SHAPIRO
                                            Deputy Branch Director

                                            */s/ Jason K. Altabet*
                                            JASON K ALTABET
                                            Trial Attorney (Md. Bar No. 2211280012)
                                            Federal Programs Branch
                                            U.S. Department of Justice, Civil Division
                                            1100 L St. NW
                                            Washington, DC 20005
                                            Tel: (202) 514-9237
                                            Email: jason.k.altabet2@usdoj.gov

                                            *Counsel for Defendants*